BEAL v. AMERICAN DIAMOND ROCK-BORING CO.

(Supreme Court, Appellate Term, First Department. April 27, 1896.)

1. ASSUMPSIT—MONEY LOANED—EXCHANGE OF CHECKS.
    An exchange of checks for equal amounts, between two parties,—one check being paid, and the other dishonored,—imports a loan to the party receiving the money; and if the dishonored check be subsequently surrendered, without payment or satisfaction, an action for the amount of the loan may be maintained.

2. SAME—EVIDENCE.
    The fact that the dishonored check was made by a company, to the order of a party who was its president, and the exchange was made by him with the plaintiff, and that he subsequently retired the check by giving two bonds of his own, taking back an option to repurchase on or before a certain date, is not conclusive that the loan was made to the payee of the check, and not to the company of which he was president, nor that the subsequent surrender of the check, and receipt of the bonds, was a payment of the check.

3. SAME—QUESTION FOR JURY.
    Upon the facts of the case, it was proper to submit to the jury the question as to whom the loan was made, and whether it was repaid.

(Syllabus by the Court.)

Appeal from city court of New York, general term.

Assumpsit by Byron A. Beal against the American Diamond Rock-Boring Company for money loaned. There was judgment for plaintiff, which was affirmed by the general term of the city court (37 N. Y. Supp. 25), and defendant appealed. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Burton N. Harrison, for appellant.

Putney & Bishop, for respondent.

DALY, P. J. The transactions involved in this action were had between the president of the defendant company, Mr. Tompkins, and the plaintiff. In May, 1891, Mr. Tompkins called on the plaintiff, with a check of the company, signed by Mr. Tompkins, the president, and Mr. Bostelmann, the treasurer, to the order of Mr. Tompkins, for $750, dated May 4, 1891, and indorsed by Mr. Tompkins. Mr. Tompkins asked for an exchange of checks, and received from the plaintiff his check to the order of the defendant, the American Diamond Rock-Boring Company, for $750, dated May 4, 1891. This check was indorsed by Mr. Tompkins, "American Diamond Rock-Boring Company, C. H. Tompkins, Prest.," and collected. The check of the company, for which it was exchanged, was deposited by the plaintiff for payment, and returned unpaid. Some days afterwards Mr. Tompkins called on the plaintiff, and received the check on giving the plaintiff his own check for interest and commission, $37.50, and two bonds of the Idaho Mining & Irrigation Company; receiving from the plaintiff an agreement to reconvey the bonds to Mr. Tompkins on the payment of $750 by or before June 6, 1891. The exchange of the check of the defendant company for the check of the plaintiff, and the payment of the latter while the former was dishonored, imported a loan of money by the plaintiff to the company; and the subsequent surrender of the latter check, if, upon such surrender, there was no payment of the loan, nor release of the company, entitled the plaintiff to maintain an action against the company for the original consideration, to wit, the money loaned.

The case was submitted to the jury on the issue raised by the answer, as to whether the loan was made to Mr. Tompkins individually, or to the company of which he was president, and whether it had been paid and discharged. At the close of the whole case the defendant moved for the direction of a verdict in its favor, which was denied, and an exception taken. The contention of the defendant that the transaction was a loan by the plaintiff to Mr. Tompkins individually, and not to the company of which he was president, is based principally upon evidence showing that he had a previous individual transaction with the plaintiff, substantially upon collateral, which loan had been several times extended, and was still unsettled when he called on the plaintiff with the check in question; upon the testimony of Mr. Tompkins, "I went to Mr. Beal, * * * and asked him to loan me $750 by an exchange of checks for a few days;" and upon the evidence that Mr. Tompkins took up the dishonored check by giving his own check for the interest and

commission thereon, and by giving two bonds, his own property, with the option to repurchase for the amount of the loan. The facts are not conclusive against the claim of the plaintiff that the loan was made to the company, and not to Mr. Tompkins individually. The latter does not testify that he informed the plaintiff that the loan was upon his individual account. All that he stated to the plaintiff at the time is consistent with an application on behalf of the company. While it is significant that the company's check was made to his order as an individual, it is quite as significant that the plaintiff gave, and that Tompkins received in exchange for it, a check to the order of his company. The defendant seeks to avoid the effect of the transaction, as expressed by that instrument, by suggesting that the drawing that check to the order of the company, and not to Mr. Tompkins individually, was due to a mistake. But there is no evidence of mistake,—no evidence that plaintiff did not intend to do exactly what he did, in drawing the check so that the money he loaned should go to the defendant; and the reasonable inference and presumption from the giving and receiving of the check so drawn is that the loan was made to the company, and was so understood by the plaintiff and by the president. The latter applied for an exchange of checks, and the plaintiff might fairly infer that the loan was asked on behalf of the party for whose check the plaintiff's was exchanged. It was not conclusive that the defendant's check was drawn to the order of Tompkins individually, since it might be assumed that this was done for the sake of convenience, in enabling him to transfer it by indorsement over to the party from whom he might be able to obtain a loan or exchange. The receipt afterwards from Mr. Tompkins of his bonds, and delivering of the note of the company to him, is not very strong evidence that the original loan was not made to the company. It looks rather the other way, as indicating a desire on Mr. Tompkins' part, by retiring the company's written obligation, to prevent recourse against it for its indebtedness. Whether this latter transaction was a satisfaction of the company's indebtedness was a question of fact. There was no evidence of an agreement to receive Mr. Tompkins' bonds as payment, save what is to be inferred from the surrender of the check. To rebut the inference that the debt was then discharged, we have the undisputed fact that after that time the plaintiff tried to induce Mr. Tompkins to allow the $750 out of the moneys coming to the company which the plaintiff collected on collateral to a subsequent loan to the company. Mr. Tompkins testified:

"He wanted me to pay him the $750, claiming that I still owed him $750 on the alleged transaction he is referring to now. I told him that, if there was any indebtedness upon that, it was mine, and not the company's; that the company had nothing to do with it, and that it was a matter between him and me; that I was willing to repay it to him out of this, if it could be done, but, in the condition in which the company then was, it could not be done; and that I would probably make an arrangement with him shortly."

This testimony of the defendant evidently disposed the jury to regard the transaction by which the check was given up as not understood by either party as a payment of the debt. This being

so, there remained only the question as to whether the original loan was made to the defendant, and the evidence upon that point sustains the finding that it was.

The judgment and order should be affirmed, with costs. All concur.